UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
Hartford Division

| | | |
|---|---|---|
| In re | : | CASE NO. 16-20005 |
| BAILEY HILL MANAGEMENT, LLC, | : | (Chapter 11) |
| Debtor. | : | |
| BAILEY HILL LENDING TRUST, PINE BANKS NOMINEE LENDING TRUST and SLATER HILL LENDING TRUST, | : | |
| Movants, | : | |
| v. | : | |
| BAILEY HILL MANAGEMENT, LLC, | : | |
| Respondent. | : | MARCH 29, 2016 |

**MOTION TO DISMISS WITH PREJUDICE**

Bailey Hill Lending Trust, Pine Banks Nominee Lending Trust and Slater Hill Lending Trust (collectively, the "Movants"), by and through their undersigned counsel, hereby move this Court, pursuant to 11 U.S.C. § 1112(b), to dismiss this case with prejudice because the evidence overwhelmingly demonstrates that the debtor, Bailey Hill Management, LLC (the "Debtor"), filed this case in bad faith and that there is a substantial and continuing loss to the estate with no possibility that the Debtor will be able to effectively reorganize.

In support of this Motion, the Movants respectfully represent as follows:

6881287v1

-2-

**FACTUAL BACKGROUND**

1. On January 4, 2016, (the "Petition Date") the Debtor filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Bankruptcy Code.

2. Prior to the Petition Date, the Debtor and the Movants were involved in lengthy litigation in the Connecticut Superior and Appellate Courts regarding the Debtor's breach of three (3) promissory notes in the aggregate principal amount of $3,425,000.00.

3. Specifically, on or about March 10, 2010, the Movants commenced an action in the Superior Court against the Debtor and non-debtor individuals, Edward R. Eramian ("Eramian") and Joel S. Greene ("Greene"). <u>Bailey Hill Lending Trust, et al. v. Edward R. Eramian, et al.</u>, FST-CV-10-5013349-S (the "Superior Court Action").

4. In the Superior Court Action, the Movants alleged that the Debtor breached (i) a promissory note dated December 18, 2005 payable to Bailey Hill Lending Trust in the original principal amount of $2,500,000.00 (the "Bailey Note"); and (ii) a promissory note dated July 27, 2007 payable to Pine Banks Nominee Lending Trust in the original principal amount of $500,000.00 (the "Pine Banks Note").

5. As set forth in the Superior Court Action complaint, the Bailey Note was secured by personal guaranty agreements executed by Eramian and Greene and by mortgages on property owned by the Debtor and located at 963 Bailey Hill Road, East Killingly, Connecticut (the "Bailey Property") and on property owned by Eramian and located at 207 Tracy Road, Dayville, Connecticut (the "Tracy Property").

6. In addition, the Pine Banks Note was secured by personal guaranty agreements executed by Eramian and Greene and by mortgages on the Bailey

Property, the Tracy Property and by property owned by Eramian and located at 291 Slater Hill Road, Killingly, Connecticut (the "Slater Property").

7. Further, on October 5, 2006, Eramian and Greene executed a promissory note in favor of Slater Hill Lending Trust in the original principal amount of $425,000.00 (the "Slater Note") which was secured by a mortgage on the Bailey Property, the Tracy Property and the Slater Property. (The Bailey Note, the Pine Banks Note and the Slater Note are hereinafter collectively, the "Notes.")

8. Subsequent to the commencement of the Superior Court Action, the parties entered into a Settlement Agreement, which provided for payments to the Movants in satisfaction of the debt due under the Notes and further provided that if the Debtor, Eramian and Greene defaulted on the payment schedule, the Movants were entitled to seek entry of a stipulated judgment of $5,500,000.00 less credit for any payments made. The Settlement Agreement was later amended to permit an extension of the payment terms (the "Amended Settlement Agreement").

9. The Debtor, Eramian and Greene defaulted under the payment terms of the Amended Settlement Agreement, and on October 1, 2015, the Superior Court (Mottolese, J.) entered judgment in favor of the Movants and against the Debtor, Eramian and Greene in the amount of $5,309,000.00 (the "Judgment").

10. On October 19, 2015, the Debtor, Eramian and Greene filed an appeal of the Judgment in the Connecticut Appellate Court (Docket No. AC 38481) (the "Appeal"). In response, the Movants filed a Motion to Terminate Appellate Stay on the basis that the sole purpose of the Appeal was to obstruct the Movant's right to enforce the Judgment.

11. Upon information and belief, on December 17, 2015, Eramian transferred his interest in the Slater Property to the Debtor for "$1 and other valuable consideration." (A copy of the Quitclaim Deed which is recorded in Volume 1297 at Page 36 of the Town of Killingly Land Records is attached hereto as <u>Exhibit A</u>.)

12. Importantly, Eramian transferred the Slater Property to the Debtor <u>without the Movants' knowledge or consent and in direct violation of the Movants' mortgage on the Slater Property</u>, which prohibits Eramian from transferring the property without the Movants' written consent.

13. Less than three weeks after obtaining title to the Slater Property, the Debtor filed its bankruptcy petition, which stayed the Appeal.

14. Pursuant to the Debtor's Schedule A/B, its assets consist of certain farming machinery valued at $500.00, the Bailey Property (valued at $3,500,000.00) and the Slater Property (valued at $1,000,000.00) for total assets of $4,500,500.00. (<u>See</u> Dkt. No. 13).

15. Pursuant to the Debtor's Schedule D, secured claims against the estate total $5,754,850.00 and include mortgages on the Bailey Property in favor of the Bailey Hill Lending Trust and the Slater Hill Lending Trust (the values of which the Debtor disputes), a mortgage against the Bailey Property held by an individual named Aron Austerlitz in the amount of $400,000.00, and additional liens held by the Town of Killingly in the amount of $37,849.00, and the East Killingly Fire District in the amount of $8,000.00. <u>Id</u>.

16. The Debtor failed to list the liens held against the Slater Property, including a mortgage held by the Slater Hill Trust.

-5-

17. On its Schedule E, the Debtor listed $2,362.00 in unsecured claims. Id.

18. In its Statement of Financial Affairs, the Debtor listed the Superior Court Action; however, stated that the case is "pending" when, as set forth above, the case is on appeal. Id.

19. Pursuant to the Debtor's Schedules, the Debtor's sole source of income consists of rent received under a lease of the Slater Property in the amount of $400.00 per month. Id.

20. Pursuant to the Debtor's January 2016 Monthly Operating Report (the "January MOR"), the Debtor received $400.00 in rental income and incurred $3,892.74 in operating expenses, which includes payment of post-petition taxes to the Town of Killingly in the amount of $3,838.70 and utilities in the amount of $54.04. Therefore, the Debtor reported a net loss in operating expenses of -$3,492.74 and overall negative equity of -$1,245,030.49. (See Dkt. No. 17).

21. Pursuant to the Debtor's February 2016 Monthly Operating Report (the "February MOR"), the Debtor received $400.00 in rental income and a loan and/or advance in the amount of $6,000.00. Neither the source of the loan nor the terms thereof are included in the February MOR. Although this loan enabled the Debtor to report a positive net cash flow of $2,171.14 in February, the Debtor continued to report overall negative equity of -$1,239,043.95. (See Dkt. No. 21).

## ARGUMENT

**I.    THE CASE MUST BE DISMISSED PURSUANT TO 11 U.S.C. § 1112(b)**

22. Pursuant to Section 1112(b) of the Bankruptcy Code, this case must be dismissed for cause because this case constitutes a bad faith filing, there is substantial

and continuing loss to the estate and no likelihood that the Debtor has the ability to effectively reorganize. Section 1112(b) provides:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1). "If a bankruptcy court determines that cause has been shown, then it 'has no choice, and no discretion,' and must dismiss or convert the Chapter 11 case." In re Richard H. Friedberg, 2013 U.S. Dist. LEXIS 55987 *8 (D. Conn. 2013) quoting In re TCR of Denver, LLC, 338 B.R. 494, 498 (Bankr. D. Colo. 2006). The moving party has the burden of demonstrating cause for dismissal. In re MF Global Holdings Ltd., 465 B.R. 736, 742 (Bankr. S.D.N.Y. 2012) (citing In re Loco Realty Corp., 2009 Bankr. LEXIS 1724, at *2 (Bankr. S.D.N.Y. June, 25 2009). "Once the movant has established cause, the burden shifts to the respondent to demonstrate by evidence the unusual circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate." Id. (quoting 7 Collier on Bankruptcy ¶ 1112.05[1]).

23. Pursuant to Section 1112(b)(4), "cause" for dismissal includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). In determining whether an estate has suffered substantial or continuing loss, a court "must make a full evaluation of the present condition of the estate, not merely look at a debtor's financial statements." Taub v. Adams, et al., 2010 U.S. Dist. LEXIS 401805 *37 (E.D.N.Y. Aug. 30, 2010). A debtor's "negative post-petition cash flow and inability to pay current expenses" as well as "failure to pay administrative expenses associated with real

-6-

property" and "failure to pay professional fees" evidences continuing losses. Id.; see also In re Seneca Bioenergy, LLC, 2015 Bankr. LEXIS 1685 *8 (Bankr. W.D.N.Y. May 19, 2015) (cause existed to dismiss a Chapter 11 case because not only did the debtor's monthly operating reports demonstrate that the debtor was operating at a loss while incurring post-petition expenses, but the debtor failed to pay post-petition adequate protection payments to secured creditors).

24.  In addition, a debtor must demonstrate a "reasonable likelihood of rehabilitation" in order to avoid dismissal. 11 U.S.C. § 1112(b)(4)(A). "Rehabilitation requires that the 'debtor will be reestablished on a sound financial basis, which implies establishing a cash flow from which current obligations can be met.'" Taub v. Adams, 2010 U.S. Dist. LEXIS 104805 *37. The mere possibility that an estate will be infused with funds either from investors or otherwise is insufficient to constitute a reasonable likelihood of rehabilitation. Id. at *37-38; In re Seneca Bioenergy, LLC, 2015 Bankr. LEXIS 1685 *9.

25.  Further, although not specifically enumerated in the statute, courts in the Second Circuit have held that bad faith constitutes "cause" for dismissal under Section 1112(b). In re Julian, No. 11-30151, 2012 Bankr. LEXIS 494, at *8 (Bankr. D. Conn. Feb. 15, 2012); In re Loco Realty Corp., No. 09-11785, 2009 Bankr. Lexis 1724, at *6 (Bankr. S.D.N.Y. June 25, 2009). "[A]n implicit prerequisite to filing a bankruptcy petition is 'good faith on the part of the debtor, the absence of which may constitute cause for dismissal.'" In re Loco Realty Corp., 2009 Bankr. LEXIS 1724, at *7 (quoting Carolin Corp. v. Miller, 886 F.2d 693, 698 (4th Cir. 1989)). In the Second Circuit, courts look to following factors to determine whether the case was brought in bad faith:

> (1) the debtor has only one asset; (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors; (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt; (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action; (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; (6) the debtor has little or no cash flow; (7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and (8) the debtor has no employees.

In re Loco Realty Corp. at *8 (citing C-TC 9th Ave. P'ship v. Norton Co. (In re: C-TC 9th Ave. P'ship), 113 F.3d 1304, 1311 (2d. Cir. 1997).

### A. This Case Must Be Dismissed Because The Debtor Filed For Chapter 11 In Bad Faith

26.  Cause exists to dismiss this case because the evidence overwhelmingly demonstrates that the Debtor filed for bankruptcy protection in bad faith. A majority of the factors enumerated by the Second Circuit as indicia of bad faith are present here, the most egregious being the manner in which the Debtor conducted its affairs after the entry of the Judgment. In fact, the timing of the Debtor's case evidences a specific intent to abuse the bankruptcy process and delay the Movants' legitimate efforts to enforce their rights.

27.  As set forth above, the Debtor, Eramian and Greene failed to pay the Movants as required by the Amended Settlement Agreement and as a result, the Movants obtained a judgment in the Superior Court in the amount of $5,309,000.00. The Debtor then appealed the Judgment – the sole purpose of which was to prevent the Movants from collecting thereon. Shortly after filing the Appeal, and before the Superior Court had an opportunity to rule on the Motion to Terminate Appellate Stay, Eramian transferred his interest in the Slater Property to the Debtor – presumably to provide the

Debtor with additional assets and an income basis to bolster its Chapter 11 petition. The Debtor should not be permitted to maneuver its assets in such an obvious ploy to manipulate the bankruptcy process.

28.   In addition, the Debtor has few unsecured creditors whose claims are small ($2,362.00) in relation to the claims of the secured creditors ($5,754,850.00). Although the Movants did not initiate a foreclosure action prior to the Petition Date, it would have been entirely appropriate to do so as the mortgages on the Bailey Property and the Slater Property have been in default since at least 2010. Further, this case is in essence a two-party dispute between the Debtor and the Movants which was already resolved by the Superior Court Action. Moreover, the Debtor has very little cash flow and as demonstrated more fully below, will be unable to meet its financial obligations in Chapter 11. Finally, upon information and belief, the Debtor has no employees.

29.   The Debtor should not be permitted to continue in this forum as its sole reason for filing for bankruptcy was to orchestrate a scheme to delay enforcement of the Judgment. Accordingly, this case should be dismissed pursuant to 11 U.S.C. § 1112(b) because it constitutes a bad faith filing.

### B.   This Case Must Be Dismissed Because The Estate Is Suffering From Substantial Or Continuing Loss

30.   Cause exists to dismiss this case because there is substantial or continuing loss to the estate. As set forth above, the Debtor's sole source of income is from rents in the amount of $400.00 per month and the Debtor is currently operating at a net loss.[1] The Debtor is required to pay operating expenses, post-petition taxes and

---

[1]   Pursuant to the January MOR, the Debtor collected $4,800.00 in rents for the Slater Property in 2014 and 2015. Although the Debtor claims it is the lessor of

utilities during the course of its Chapter 11 case. Although the Debtor claims it is current on its post-petition taxes, according to the Town of Killingly's records, the sum of $7,569.56 is due and owing for the Bailey Property and the sum of $2,106.04 is due and owing for the Slater Property. In addition, the Debtor must continue to maintain insurance, which according to the January MOR, cost $1,142.00 in 2015. The January MOR also includes $3,018.31 in equipment rental fees for 2015. Clearly, the Debtor's income falls far short of its expenses.

31.     As set forth above, the Debtor reported that in February 2016, it obtained a loan and/or advance in the amount of $6,000.00. The Debtor has not disclosed the identity of the lender, the terms of the loan and whether the lender will continue to fund the Debtor's Chapter 11 case. Therefore, this one-time loan will not cover the Debtor's ongoing expenses and the assets of the estate will continue to diminish. Accordingly, due to the Debtor's probable negative post-petition cash flow and inability to pay its expenses, cause exists to dismiss the Debtor's case.

### C.     **This Case Must Be Dismissed Because The Debtor Has No Ability to Effectively Reorganize**

32.     To avoid dismissal, a debtor "must evidence 'some feasibility of effectuating a viable reorganization plan.'" In re Loco Realty Corp., 2009 Bankr. LEXIS 1724, at *11 (Bankr. S.D.N.Y. June 25, 2009) (citation omitted). "' … [O]nce rehabilitation becomes unrealistic, the debtor should not be permitted to remain under [c]hapter 11.'" Id. (citation omitted).

---

the Slater Property, it is unclear whether the Debtor was the lessor prior to obtaining title to the Slater Property on December 17, 2015, and if in fact it had been entitled to the rents prior to that date.

6881287v1

33. Here, reorganization is simply not feasible. As set forth above, the Debtor's income is insufficient to meet its expenses and the Debtor has not disclosed how it intends to fund a Chapter 11 plan. A one-time loan and/or the possibility of an infusion of funds will not constitute a reasonable likelihood of rehabilitation. Accordingly, this case should be dismissed pursuant to 11 U.S.C. § 1112(b) because the Debtor has no ability to reorganize.

## **CONCLUSION**

For the reasons set forth above, the Court should grant the Motion to Dismiss this case with prejudice.

MOVANTS – BAILEY HILL LENDING TRUST, PINE BANKS NOMINEE LENDING TRUST AND SLATER HILL LENDING TRUST

By  /s/ Meredith C. Burns
    Robert E. Kaelin – ct11631
    Meredith C. Burns – ct27544

Murtha Cullina LLP
CityPlace I - 185 Asylum Street
Hartford, Connecticut 06103-3469
Telephone:  860.240.6000
Facsimile:   860.240.6150
Their Attorneys

6881287v1